UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILIP J. WAISONOVITZ,  :  | |
|     Plaintiff  : | CIVIL ACTION NO. |
| v.  : | 3:05-CV-1928 (JCH) |
| : | |
| METRO-NORTH COMMUTER RAILROAD : | FEBRUARY 22, 2008 |
|     Defendant  : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. NO. 63]**

Plaintiff Philip J. Waisonovitz brings this suit against his former employer, defendant Metro-North Commuter Railroad ("Metro-North"), under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. Waisonovitz suffered significant emotional injury when he discovered that the train he was operating had run over and killed a co-worker, Robert Ard. Waisonovitz attributes the accident to negligence by Metro-North, and he seeks monetary damages for his injuries. Metro-North has filed a Motion for Summary Judgment, arguing that any recovery by Waisonovitz is barred by the "zone of danger rule" announced in Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994). The court agrees, and it therefore **GRANTS** defendant's Motion.

**I.      STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present

1

such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000). However, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

When considering a motion for summary judgment, the court normally must take the facts in the light most favorable to the non-moving party.  But that usual rule does not fully apply when a plaintiff has not fully complied with this court's Local Rules. Under D. Conn. Civ. R. 56(a)(3), when a party files a Local Rule 56(a)(2) statement, "each denial . . . must be followed by a specific citation to" evidence.  This specific citation obligation "requires counsel . . . to cite to specific paragraphs when citing affidavits or responses to discovery requests, and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length."

D. Conn. Civ. R. 56(a)(3). A party's failure to comply with the specific citation obligation "may result in the court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)(1)." Id.

## II. FACTUAL BACKGROUND

In many circumstances, Waisonovitz's Rule 56(a)(2) statement contains no citations to record evidence, despite the fact that Waisonovitz appears to dispute parts of corresponding paragraphs in Metro-North's Rule 56(a)(1) statement. See Plaintiff's Amended 56(a) Response ("Plaintiff's 56(a)(2)") at ¶¶ 5-6, 8-9, 11, 13, 15, 17-18. Accordingly, the court deems Metro-North's Rule 56(a)(1) factual statements to be admitted in so far as they correspond to the above-listed paragraphs. In all other respects, the court describes the evidence in the light most favorable to Waisonovitz.

The unfortunate events in this case took place in the late evening hours of March 9, 2004, and the early morning hours of March 10, 2004. Waisonovitz, Ard, and a third individual, Ray Durkin, were working together as a switching crew in Metro-North's Stamford Yard. Defendant's 56(a)(1) at ¶ 2; Plaintiff's 56(a)(2) at ¶ 2. The crew was engaged in several operations that required a train to be moved back and forth from various tracks. Waisonovitz was operating the train, while Ard was performing work on the ground.

At the time of the accident, Waisonovitz was seated in the eastern-most end of the eastern-most car in the train. Defendant's 56(a)(1) at ¶ 7; Plaintiff's 56(a)(2) at ¶ 7. As Waisonovitz was backing up the train, Ard was struck by the western end of the western-most car on the train. Defendant's 56(a)(1) at ¶ 7; Plaintiff's 56(a)(2) at ¶ 7; Waisonovitz Dep. at 79. The train was eight cars long, and Waisonovitz could not see

3

the back of the train from where he was sitting. Defendant's 56(a)(1) at ¶¶ 7-8; Plaintiff's 56(a)(2) at ¶¶ 7-8. After the train hit Ard, it continued to travel father west down the track, until it made a "hard hitch" with some standing equipment and came to rest.

At his deposition, Waisonovitz testified that he had no idea that Ard had been hit by the train until after the train had come to rest. Waisonovitz Dep. at 84, 99-100. He also testified that, after learning about what had happened, he began to experience a variety of symptoms, such as shortness of breath and chest pains. Id. at 106-07. Waisonovitz was later diagnosed with posttraumatic stress disorder. Defendant's 56(a)(1) at ¶ 20; Plaintiff's 56(a)(2) at ¶ 20. According to Waisonovitz, all of these symptoms resulted from Waisonovitz learning, after the fact, that he had killed Ard. Waisonovitz Dep. at 107-108. Waisonovitz suffered no physical injuries as a result of the impact between Ard and the train. Id. at 100. Waisonovitz also suffered no injuries from the "hard hitch." Defendant's 56(a)(1) at ¶ 14; Plaintiff's 56(a)(2) at ¶ 14.

Waisonovitz made several important admissions at his deposition. He testified that at the time the train hit Ard, Waisonovitz had not in any way felt threatened with physical harm. Waisonovitz Dep. at 111. Indeed, Waisonovitz was not aware his train had struck Ard at the time of impact. Id. at 84, 99-100. Waisonovitz also admitted that he had not feared for his physical safety at the time of the hard hitch. Id. at 111-12; see also Defendant's 56(a)(1) at ¶ 15; Plaintiff's 56(a)(2) at ¶ 15.[1]

Waisonovitz filed his Complaint in this court on December 19, 2005. In his

---

[1] Indeed, Waisonovitz did not anticipate the hard hitch at all. Waisonovitz Dep. at 111-12.

4

Complaint, he alleged that he had suffered injury as a result of Metro-North's negligence, specifically its failure to provide safe equipment and workspaces, and its failure to adequately supervise its employees.

III.   ANALYSIS

This FELA case is controlled by the Supreme Court's decision in Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994). FELA gives railroad employees a cause of action against their employer if the employee "suffer[s] injury while he is employed by such carrier . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of" the railroad. 45 U.S.C. § 51. In Gottshall, the Supreme Court construed this provision as permitting recovery for negligent infliction of emotional distress only for "those plaintiffs who sustain a physical impact as a result of the defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." 512 U.S. at 547-48; see also id. at 554; Nelson v. Metro-North Commuter R.R., 235 F.3d 101, 105 (2d Cir. 2000). This is known as the "zone of danger" test, Gottshall, 512 U.S. at 547, and Waisonovitz's claim fails under this test.

It is plain that Waisonovitz seeks to recover for emotional distress damages. As the Court explained in Gottshall, emotional distress is "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." 512 U.S. at 544. This describes Waisonovitz's injury perfectly.

It is also plain that Waisonovitz can meet neither prong of the zone of danger test. As Waisonovitz made clear at his deposition, he did not sustain any injury from

physical impact to his body – either at the time of the collision with Ard, or during the subsequent "hard hitch." Cf. Nelson, 235 F.3d at 110 ("[A]n event cannot constitute a physical impact, even if it entails contact, unless it has a physically harmful effect on the body . . . ."). Additionally, Waisonovitz made clear that he was never in the zone of danger: he did not know that he was about to hit Ard, he did not anticipate the hard hitch, and he did not believe at any point that his physical safety was in any immediate threat. Cf. id. at 113 (holding that a plaintiff was not within the zone of danger when she faced only a "minimal" risk of physical harm).

In his Memorandum in Opposition, Waisonovitz asserts that, despite the crystal clear deposition testimony, Waisonovitz knew immediately that Ard had been killed. Plaintiff's Objection at 12. Waisonovitz further asserts that, immediately after the train hit Ard, Waisonovitz went into an immediate state of shock and became unable to control the train. Id. While riding this allegedly out of control train, Waisonovitz contends, he was in the "zone of danger" because the train could have crashed at any moment. Id.

Unfortunately for Waisonovitz, this theory has absolutely no evidentiary support. The sole evidence Waisonovitz offers is from the train's "event recorder," which operates much like an airplane's black box. In an Affidavit, Waisonovitz interprets the event recorder data as showing a "highly unusual" breaking pattern. Plaintiff's Exh. N at ¶ 9. Yet in the same Affidavit, Waisonovitz states that he cannot explain why he engaged in this breaking pattern and does not remember doing so. Id. The Affidavit does not state that the breaking pattern reflects a loss of control, or that the breaking pattern in any way increased any risk of physical impact for Waisonovitz.

6

It is sheer speculation to infer from this that: (1) contrary to Waisonovitz's deposition testimony, he <u>did</u> immediately realize that he had killed Ard; (2) he immediately thereafter experienced a psychological episode that caused him to lose control of the train; and (3) was thereafter in an imminent risk of physical harm. Moreover, the event recorder evidence is all the more insufficient in light of Waisonovitz's admissions, through his Rule 56(a)(2) statement, that he was not aware that Ard was struck by the train at the time it occurred. Defendant's 56(a)(1) at ¶ 6; Plaintiff's 56(a)(2) at ¶ 6.[2] Waisonovitz's emotional distress claims, to the extent they are based on any negligence by Metro-North, cannot survive summary judgment.

Waisonovitz also contends that he has established a claim for intentional infliction of emotional distress, and he points to post-accident statements made by another Metro-North employee. Plaintiff's Objection at 23-24. However, Waisonovitz's Complaint is completely devoid of any claim for intentional infliction of emotional distress, and he cannot now assert one.

## V.     CONCLUSION

The defendant's Motion for Summary Judgment [Doc. No. 63] is **GRANTED**. Although Waisonovitz has requested oral argument in a Motion, <u>see</u> Doc. No. 77, the court sees no need for argument. That Motion [Doc. No. 77] is **DENIED**. The clerk is ordered to close the case.

---

[2] Even if the evidence was sufficient, Waisonovitz would still have no valid claim. The zone of danger test allows a worker to recover for "emotional injury <u>caused by</u> fear of physical injury <u>to himself</u>." <u>Gottshall</u>, 512 U.S. at 556 (emphasis added). All of Waisonovitz's emotional injuries were caused by his learning about Ard's death; there is no evidence he suffered any injuries from a fear that <u>he</u> was going to be injured while operating a train – even an out-of-control one.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of February, 2008.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge